## UNITY BANKING & SAVING CO. v. BOYDEN et al.

### (Circuit Court of Appeals, Sixth Circuit. March 23, 1908.)

### No. 1,750.

BANKRUPTCY—SECURITIES—CLAIM—SUBROGATION.

F., while a customer of the bankrupts, deposited with them 50 shares of C. manufacturing stock as a basis for credit, without signing the power of attorney for transfer, and also deposited certain railroad stock, on which he did sign a power for transfer. The bankrupts forged F.'s name to the power of transfer on the manufacturing stock, and pledged the same to a bank as security for a loan, and also pledged the railroad stock to another for more than its value. On the final closing of F.'s account with the bankrupts he was indebted to them in the sum of $930, which was more than covered by the railroad stock. *Held*, that the bank was at most only entitled to subrogation to the bankrupt's right to hold the manufacturing company's stock for F.'s indebtedness, and that such facts were insufficient to show that the bankrupts had any equitable right thereto.

Appeal from the District Court of the United States for the Southern District of Ohio.

Constant Southworth, for appellant.

Theo. Horstman, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. On May 25, 1905, the firm of Holzman & Co., brokers, doing business in Cincinnati, made an assignment for the benefit of its creditors, and afterwards, on July 1, 1905, was adjudicated a bankrupt. On May 13, 1905, Richard Fritz, a customer of this firm, "placed in the hands of Ross Holzman, a member of the firm, a certificate, No. 10, for 50 shares of the preferred stock of the Carey Manufacturing Company, the certificate being in the name of Fritz Bros., and indorsed to Richard Fritz by Fritz Bros., per Otto Fritz." On May 15, 1905, this certificate was pledged by Holzman & Co. with the Unity Banking & Saving Company as a substituted security upon a note of March 21, 1905, for $10,000, executed by the firm to the bank, other security corresponding in value being withdrawn at

the time of the substitution. At the time this certificate was pledged by Ross Holzman there was pinned to it a power of attorney purporting to have been signed on May 3, 1905, by Richard Fritz in the presence of Ross Holzman. None of the blanks in the power of attorney are filled; the only writing being the date, the name "Richard Fritz" in the blank for the signature, and "Ross Holzman" in the blank for the attestation. Richard Fritz testified that he did not sign the power of attorney, or authorize any one to sign it for him. The questions referred to the referee were raised by the amended petition of Richard Fritz, the answer of the Unity Banking & Saving Company, the answer of Boyden, trustee of Holzman & Co., and the reply of Richard Fritz to the answers of the Unity Banking & Saving Company and Boyden, trustee. Richard Fritz claimed he was the owner of the 50 shares of the Carey Manufacturing Company preferred stock now in the hands of Boyden, trustee, and prayed for an order on the latter to deliver him a certificate free from all liens and interest therein of the Unity Banking & Saving Company. The banking company answered that on March 21, 1905, it loaned to Holzman & Co. $10,000, taking a demand note, and as security certain collateral; that on May 15, 1905, the banking company took from Holzman & Co., as a substitute for some of the collateral, the 50 shares of the Carey Manufacturing Company preferred stock, collateral substantially equal in amount being withdrawn. It did this without knowledge or notice of any claims of Richard Fritz thereto, relying on the representations of Holzman & Co. that it had full power to pledge the stock; that Richard Fritz executed the blank power of attorney authorizing the transfer of the Carey stock, or authorized Holzman & Co. to execute it in his name. Boyden, trustee, admits that the Unity Banking & Saving Company took as security for the $10,000 notes mentioned in the answer certain collateral, and denies that said collateral was taken as security for any indebtedness other than the said $10,000 note. Richard Fritz in his reply denies the allegations of the Unity Banking & Saving Company respecting the circumstances under which it came into possession of the certificate for 50 shares of the Carey Manufacturing Company preferred stock. He avers that at no time prior to the assignment of the bankrupt did it make any demand upon him to pay any indebtedness which he did not forthwith pay, and that the bank had no authority to hypothecate the 50 shares of the Carey stock. He says that at the time of the commencement of these proceedings in bankruptcy he was not indebted to Holzman & Co. in any sum. The case was referred to Charles T. Greve, who weighed the testimony carefully, and presented an elaborate opinion, in which he found that Mr. Fritz did not sign or authorize the signature to the power of attorney upon the authority of which the 50 shares of the Carey Manufacturing Company preferred stock was pledged by Holzman & Co. to the Unity Banking & Saving Company. In other words, the referee found that this power of attorney was a forgery. It was also found that the Carey stock was deposited with Holzman & Co. upon an express contract that it was simply to be held to show Fritz's responsibility, and not to pass out of Holzman & Co.'s possession, and that at no time was any demand made upon him or notice served upon

him changing the conditions of this contract; also, that at the conclusion of the dealings between Fritz and Holzman & Co. Fritz was a creditor of Holzman & Co., not a debtor.

As a conclusion of law from these conclusions of fact the referee found that:

"Where F. deposits with a broker a certificate of stock belonging to F. and in his name, without any indorsement or power to execute or transfer said stock, upon an agreement that said stock is to be held by said broker, as an evidence of F.'s financial responsibility only, and is not to leave the broker's possession, and the broker pledges said certificate to a bank as security upon a note of the broker for money loaned by the bank to the broker for general use of the broker, the bank holds said certificate subject to all the conditions of the original deposit by F. with the broker, and F. is not estopped to claim title to said certificate as against the bank by the mere placing of said certificate in the hands of the broker, or the further fact that in the course of dealings beween F. and the broker large balances have at various times been owed by F. to the broker when it appears that no demand for the payment of said balances was made upon F. or notice served upon him changing the conditions of the deposit of said stock, and, further, that at the conclusion of the dealings between F. and the broker F. is a creditor, and not a debtor, of said broker."

On consideration, the referee found that Fritz is the owner of the 50 shares of the Carey Manufacturing Company preferred stock, and the certificate therefor now in the hands of the trustee, and that he is entitled to the possession of the same free from all liens of the Unity Banking & Saving Company and Boyden, trustee in bankruptcy. The matter was carried before the court below, which found no errors in the rulings, findings, and orders of the referee, and the same were affirmed. It is quite unnecessary to go into a rediscussion of the questions of fact and law so ably handled by the referee.

On May 15, 1905, Holzman & Co., without authority, rehypothecated this stock certificate to the Unity Banking & Saving Company. On that date Holzman & Co. held not only that certificate, but another for 50 shares of C. N. & C. stock. Both certificates, we shall assume, constituted in equity a security for their entire claim against Fritz. Between that date and May 25, 1905, Fritz's liability to Holzman & Co. gradually decreased, and on May 25th, if a settlement had occurred, Fritz would have been entitled to receive back both of his stock certificates upon the payment of $920.02. That sum was the amount of the lien or equity of Holzman & Co. against the Fritz hypothecated securities. If on that date Fritz had brought this action against the Unity Banking & Saving Company to recover the certificate wrongly pledged to it, the utmost right of the Unity Banking & Saving Company would have been to hold that certificate by subrogation to the Unity Banking & Saving Company's equity for the balance then due to the Unity Banking & Saving Company; and this is the equity which counsel now say they are entitled to claim against Fritz. But against this claim to be subrogated to the equity of the Unity Banking & Saving Company, to the extent of $920.02, it is said that the Unity Banking & Saving Company had no equity, inasmuch as they had another certificate for 50 shares, and that, instead of owing them $920.02, they owed him the difference between $920.02 and the value of both

their certificates, and this is just what the account of Holzman & Co. shows to be the case on May 25th.

Now, upon what ground can it be contended that Holzman & Co. have an equitable claim which may be counted against the certificate for 50 shares of the preferred stock of the Carey Manufacturing Company? Obviously the Unity Banking & Saving Company have no better right than the trustee in bankruptcy could have against the owner of the certificates. The liability of Holzman & Co. to account to Fritz for both of these hypothecated certificates is clear. If, therefore, Holzman & Co. or their trustee in bankruptcy holds or should hold the certificate for 50 shares of C. N. & C. stock, they have no equity which would enable them to resist the claim of Fritz for the Carey certificate; and, if neither Holzman & Co. nor their trustee has any equity, it must follow that the appellant has none. But it appears that at some time before bankruptcy Holzman & Co. rehypothecated the C. N. & C. stock to one Driefus, and that certificate had been indorsed in blank by Fritz. Driefus advanced to Holzman & Co. a sum probably in excess of the value of these shares. Appellant now contends that, inasmuch as Fritz has a proceeding to recover from Driefus that certificate thus wrongfully transferred to him by Holzman & Co., if he shall succeed, he will remain indebted to Holzman & Co. in a sum stated as of $930. But, as matters stand, the bankrupt has appropriated to its own use this C. N. & C. stock, and is liable to Fritz for its return or value. Thus, whether we confine the accounting to May 25th, the date of the lowest amount of the indebtedness of Fritz to Holzman & Co., or to the final closing of the account, Fritz owes to the bankrupt something over $900. Against that the bankrupt must account for both of these certificates, or return them. The burden is upon the appellants to show that Holzman & Co. have an equitable interest in the shares which they hold to which they should be subrogated. It will not do to say that possibly Driefus may not be able to hold the shares wrongfully rehypothecated to him. That certificate has been, as we have said, indorsed in blank by Fritz. Holzman & Co. were apparently authorized to assign it. The burden was upon the appellants to show a right to subrogation to some equity which Holzman & Co. have. This they have not done.

Judgment affirmed.